**FILED**

**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below.  This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

**2008 Mar 03 PM 04:19**

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 06-33763 |
| | ) | |
| Gregory Flores and | ) | Chapter 7 |
| Aymee Flores, | ) | |
| | ) | Adv. Pro. No. 07-3070 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Charles A. Ringer, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Gregory Flores, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION**

This adversary proceeding is before the court for decision after trial on a complaint filed by Plaintiff Charles A. Ringer to determine dischargeability of a debt owed to him by Defendant Gregory Flores in connection with a promissory note executed by him in favor of Plaintiff.  Plaintiff alleges that the debt should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(4).

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) and the

general order of reference entered in this district. Proceedings to determine dischargeability are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendant is entitled to judgment in his favor on the complaint.

## FINDINGS OF FACT

The debt at issue in this case arises from a financing arrangement between the parties in order to permit Defendant to become a partner in a new business. At the time of the transaction in 2004, the parties had a familial relationship as Plaintiff was married to Defendant's mother. Plaintiff and Defendant's mother have since obtained a divorce.

In 2004, Debra Ludwig approached Defendant with a business opportunity to open a bar next door to a pizza shop owned by Ludwig. Her proposal required Defendant to invest $30,000 in order to become a partner with a 49% interest in the business. Defendant discussed the proposition with Plaintiff, his stepfather at the time. According to Plaintiff, Defendant was a responsible young man and after some discussion, he agreed to loan Defendant $32,000, $30,000 to be invested in the business and $2,000 for Defendant's living expenses until the bar was opened.

After informing Ludwig of Plaintiff's willingness to loan him the money necessary to become a partner, on January 15, 2004, Defendant entered into an agreement with Ludwig. The agreement, prepared by Ludwig, provided in its entirety as follows:

> Debra Ludwig and Greg Flores have agreed to go into a joint business known as Mikay LLC, DBA Wil's Bar and Billiards. The above mentioned will have the only interest in this business. Debra Ludwig will maintain 51% and Greg Flores will maintain 49%. Both parties will have equal say in all major decisions. Greg will invest approximately $30,000 in order to become partner.

[Pl. Ex. 3]. The agreement ("Partnership Agreement") was signed by both Ludwig and Defendant. Defendant did not obtain the advice of legal counsel before entering into this agreement. Although Plaintiff was aware that Defendant had entered into a partnership agreement with Ludwig, the court credits Plaintiff's testimony that he did not actually see the document before loaning Defendant the funds to invest in the

partnership business.

On January 20, 2004, Defendant executed a promissory note ("Note") in the amount of $32,000 in favor of Plaintiff, again without the advice of legal counsel. The Note was prepared by Plaintiff from a form he obtained on the internet and provided that Defendant pay a monthly minimum payment in the amount of the interest accrued on the principal balance that month and that the unpaid principal and interest be paid in full by February 2014. [Pl. Ex. 1]. The Note further provides that "[t]his Note is secured by a Promissory Note dated Feb 13, 2004, and executed by Gregory Flores, with respect to the following property: 49% of Bar/Pool Hall Ownership." [*Id.*]. No additional security agreement, however, was signed on February 13, 2004, or any other time, nor did Plaintiff ever request that Defendant execute such a document.

Also on January 20, 2004, the parties entered into a second agreement, referred to by Plaintiff as a "side deal." Under this agreement, Defendant agreed to pay Plaintiff "10% of Greg's profits from Will's Bar & Billiards quarterly, starting approximately May 15th, 2004" and that "[t]his 10% will be calculated before Greg's 49% of expenses." [Pl. Ex. 2]. This separate document was not otherwise referred to during the trial.

Will's Bar & Billiards opened in May or June of 2004. After securing the loan monies from Plaintiff, Defendant had given $30,000 to Ludwig, who deposited only $10,000 in the bar's business account. She told Defendant that she would hold the remaining $20,000 separate so that it would not be spent irresponsibly. According to Defendant, the business did well for approximately six months. Defendant received an agreed upon salary from the business during that time, and he then made monthly payments to Plaintiff from his personal checking account. No payments to Plaintiff have been made, however, since approximately September 2005.

Although Defendant had access to the checkbook during the first six months the bar was open, he began noticing "irregularities" in the check book. When these irregularities were brought to Ludwig's attention, she took the checkbook from him. Shortly thereafter, Ludwig told Defendant that the bar was "out of money" and that he could no longer be paid.

Defendant immediately called Plaintiff and informed him of Ludwig's announcement. Within a couple of weeks, at Plaintiff's suggestion, Defendant and Plaintiff engaged the services of an attorney. Both Defendant and Plaintiff met with the attorney. Defendant brought the attorney copies of all documents in his possession, including his notes regarding events that had occurred, copies of check registers, the various agreements, and the liquor license. Although Ludwig had promised to put Defendant's name on both the

3

checking account and the liquor license, by that time she had done neither. After several months, Ludwig's attorney sent a letter to Defendant's attorney stating that Ludwig was willing to repay Defendant $5,000 per month for seven months. However, no payments were forthcoming and, unsatisfied with his attorney's efforts, Defendant engaged the services of another attorney. Again, both Defendant and Ringer met with the attorney to discuss issues relating to the partnership and recovery of the funds invested by them. Also, Defendant signed waivers of the attorney-client privilege with both attorneys so that Ringer could also discuss these matters outside of Defendant's presence. Notwithstanding these efforts, the parties received no payments from Ludwig and, according to Defendant, the bar was eventually foreclosed upon.

Plaintiff testified that although he believes that Defendant invested in the business the entire $30,000 that Plaintiff loaned him, he does not believe that Defendant worked hard enough to recover either the money under Ludwig's control or his 49% interest in the business. Although he never made such a demand, Plaintiff testified that he would have been satisfied if he could have simply taken over Defendant's interest in the bar. He further testified that he would never have loaned Defendant the $30,000 in the first place if he had known that no attorney was involved in drafting the Partnership Agreement and if he had known of the provision in the Agreement that Ludwig and Defendant "will have the only interest in this business." To Plaintiff, that meant "his collateral was not entered" and that "he cannot enforce his collateral."

Defendant filed for Chapter 7 bankruptcy relief on December 22, 2006, and Plaintiff timely commenced this adversary proceeding.

## LAW AND ANALYSIS

In his complaint, Plaintiff alleges that the debt owed him by Defendant is nondischargeable under § 523(a)(2)(A). Under that subsection, a debt is excepted from discharge to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). In order to except a debt from discharge under § 523(a)(2)(A), a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money or services through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998). A debtor's intent to defraud a creditor is measured by a subjective standard and must be ascertained by the totality of the circumstances of the case at hand. *Id.* at 281-82. "If there is room for an inference of honest

4

intent, the question of nondischargeability must be resolved in favor of the debtor." *ITT Fin'l Servs. v. Szczepanski (In re Szczepanski),* 139 B.R. 842, 844 (Bankr. N.D. Ohio 1991).

In this case, Plaintiff argues, in effect, that Defendant misrepresented his ability to grant a security interest in his 49% bar ownership interest in that he failed to disclose the provision in his Partnership Agreement with Ludwig, entered into five days before the Note was signed granting the security interest, that Defendant and Ludwig "will have the only interest in this business." There is no dispute that Defendant's ability to grant the security interest was material to Plaintiff's agreement to loan Defendant money to invest in the business and that, absent Defendant's ability to do so, Plaintiff would not have loaned him the money.

A failure to disclose material facts, where there is a duty to disclose, may constitute a misrepresentation under § 523(a)(2)(A). *See Citibank (South Dakota), N.A. v. Eashai (In re Eashai),* 87 F.3d 1082, 1089 (9th Cir.1996)*; Rowe v. Steinberg (In re Steinberg)*, 270 B.R. 831, 835 (Bankr. W.D. Mich 2001). However, in this case, it is not clear that there was any misrepresentation. The court does not read the provision in the Partnership Agreement identifying Defendant and Ludwig as having the only interest in the business as precluding Defendant from granting a security interest in his 49% ownership interest in the business.

Even assuming that Defendant's failure to disclose this provision of the Partnership Agreement was a material misrepresentation, Plaintiff failed to prove that Defendant intended to deceive him by the nondisclosure. Defendant prepared neither the Partnership Agreement nor the Note setting forth the security interest. Both agreements were prepared and executed without the assistance of legal counsel. There is no evidence indicating that Defendant understood at the time he executed the Note that he was not able or did not intend to grant Plaintiff a security interest in his interest in the business. And there is no evidence that Plaintiff ever asked to see the Partnership Agreement before loaning Defendant the money to invest in the business, although he was certainly aware that Defendant had entered into a partnership agreement, or that Defendant otherwise intentionally concealed the Partnership Agreement from Plaintiff before executing the Note and obtaining the loan monies. Defendant's actions after being told that the business had no money, while not dispositive as being after the fact, is at least some evidence of his attempts to act in Plaintiff's best interests. He immediately informed Plaintiff of the situation and provided all information available to him, including the Partnership Agreement, to the attorney chosen by Plaintiff to address the matter. Although the services of a new attorney were eventually obtained, Plaintiff had the ability to freely discuss the matter

with the attorney since Defendant had waived any attorney-client privilege. Viewing the totality of the circumstances, the court concludes that Defendant acted with honest intent in entering into the loan agreement with Plaintiff.

In his complaint, Plaintiff also alleges that the debt owed him by Defendant is nondischargeable under § 523(a)(4), which excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Although Plaintiff alleges in his complaint that "only $10,000 of the loan was deposited in the business account" and that "Defendant in fact stole the money" from Plaintiff, [Doc. # 1, Complaint, ¶¶ 27-28], at trial, he testified that to the best of his knowledge, Defendant put the entire $30,000 into the business but that Ludwig "conned him" out of the money. There is no evidence supporting Plaintiff's § 523(a)(4) claim and, in closing argument, Plaintiff did not request a finding of nondischargeability under this subsection.

## **CONCLUSION**

In light of the foregoing, the court finds that Plaintiff has not met his burden of proving that the debt owed to him by Defendant is excepted from discharge under either § 523(a)(2)(A) or § 523(a)(4). Defendant is, therefore, entitled to judgment in his favor on the complaint. A separate judgment in accordance with this Memorandum of Decision will be entered by the court.